Good morning, your honors. May it please the court. Moses Shepard should never have been able to defend himself. He should never have been permitted to do it. A trial court may, in good conscience, seek to accommodate justice for a mentally ill person, but in so doing, may inadvertently become so invested in the process of doing this as to ultimately deny its ultimate objective, which is a fair trial. And this is precisely what happened here. Having no defense ultimately to present, Mr. Shepard received none at all. We are not. Did you challenge the district court's initial determination to allow him to proceed a pro se? We do, your honor, for the following reason. He was heard upon his, he did receive a Feretta hearing, and it was immediately apparent, judge, from the very onset of this case, when a dangerousness assessment was conducted by Magistrate Rateau, that there was something very seriously wrong with this person. And Judge Pyle, who has substantial experience with these sorts of cases, looked at this immediately and ordered not one but two evaluations, and distinguished between the evaluations that he wanted done, a competency to stand trial at all, and a competency to act as his own counsel. The matter was set, the order was given, and the matter reconvened for another Feretta hearing. Upon returning, Magistrate Pyle found that the defendant had refused to participate at all. And this is distinguished from another Ninth Circuit case here in which a defendant participated a bit for an hour, and ultimately there was medical testimony. Here, there was none. He participated not at all in what? In either medical evaluation. The doctor went to the jail. And what does that demonstrate, though, besides lack of cooperation? Well, I certainly don't think, your honor, that it demonstrates competence. Well, it doesn't demonstrate the opposite either, does it? And left with... Does it? Yes or no? Judge, it leaves us to not know. And Judge Pyle clearly was concerned. He specifically said he was concerned. As a matter of fact, he specifically commented that the decision as to whether this person was competent was outside of his personal expertise, and that he needed a professional opinion. And he was not ultimately ever equipped with one. Do you think a district court judge needs to get a mental competency evaluation every time a defendant asks to represent himself? It was taught in law school that an appellate court wants to decide as narrowly as possible. So I can find my response to the facts here on these facts, your honor, on these facts, where the magistrate so clearly was concerned, yes, a professional evaluation. What was it about his behavior that should have alerted the district court to deny, to force counsel on him? There are two periods of his behavior that are important. Let's start with the first part, then. Those prior to the Feretta hearing where the defendant had already exhibited odd behavior. He had exhibited... Well, odd isn't incompetent. He filed a whole lot of strange motions, but so do lawyers sometimes. I really am not... What did he do that made him appear to be incompetent? Because had the trial judge gone the other way, you would be here arguing that he was denied his Feretta right on this same record. Precisely so, Judge. But all that had to be done here was to simply, when he came back, having not participated in the examination, was to do what hundreds and hundreds of judges do every day. Say, sir, I will permit you to represent yourself, but you must participate in a mental health examination. But what court, what decision allows a judge to condition the Feretta right on participation in a mental health examination? Feretta itself speaks about mental competency. So if a defendant is a little odd, not completely incompetent, obviously, where the person has such a low IQ they can't figure out what's going on, for example, where someone is not obviously incompetent, is a trial judge even allowed to say, I will not allow you to represent yourself unless you submit to an evaluation that you do not want to submit to? Is that permitted? I think Edwards mandates it, Your Honor. If the person – well, I guess part of my question was if the person is not obviously incompetent to represent himself. And yet here again we have the post-Feretta and the pre-Feretta and the post-Feretta. Surely the conduct within the post-Feretta portion of the representation demonstrated beyond any question that this person is incompetent. What specifically in your view demonstrated that he was incompetent to represent himself? I've detailed these matters in my brief, but the avalanche of violence, the circular thinking, the obsessive thinking. This man would come to court, as the Court can clearly see, with very specific thoughts in mind and never deviate. Judge Jorgensen would deny something or would tell him, overrule something, and yet he would continue in precisely the same line. It's disorganized thinking. It's obsessive thinking. And at one point Judge Jorgensen says, I'm not going to allow you to respond to every question that I ask you with a little speech about how you're not ready. And this is an example of this obsessive thinking. Well, it's either that or it's very clever or dilatory, but not necessarily incompetent in the sense that Edwards used the phrase. It's a very important point, Judge. How are we to distinguish a mentally ill person from a malingerer? A malingerer seeks to interfere with the court's function, to delay the trial. But a malingerer, in the end, always has a rational purpose in mind. What rational purpose could possibly be served here? Also, when Judge Pyle became convinced, as he was clearly convinced, that a mental examination was necessary, I believe that one is mandatory. Otherwise, the court has no ability to judge the capacity of the defendant pursuant to and even to apply the standards set forth in Edwards. How do we distinguish between or among all of the defendants who wish to represent themselves? Because almost by definition, seeking to represent yourself in a criminal matter is irrational. Lawyers know that. I mean, hence we have the required colloquy and so on. The judge tries to talk the defendant out of it and so on. It is not, in almost all circumstances, it's not a rational response. It's constitutionally protected, but it's not rational. This man clearly is disturbed. The crime with which he's charged, 19 and a half years of stalking, indicates a certain derangement. But at what point does it become so serious that you simply can't go forward? I understand that Magistrate Judge Pyle was trying to be very cautious about it. The defendant, however, says, I'm not going to cooperate. I'm sympathetic to both sides here. What defense would a good lawyer have had in this case? Well, Judge Fletcher, a very substantial defense. The question here went very much to the state of mind of the victim in this matter, and the record is replete with inadmissible evidence, with hearsay, with evidence lacking foundation. Many things are objectionable. Also, no cross-examination whatsoever was conducted in this matter, particularly of the victim, her family, that might have ascertained why in this particular case, which did so go on so very long. And by the way, evidence was brought in of prior bad acts that were quite outside of charged conduct, that itself being somewhat objectionable. But perhaps we could have discovered that there were some other facts that gave rise to how it was that this went on so long. It was a defensible case. But here, Your Honor, no defense was ever presented. If I may, Your Honor, there are reasons why a defendant might want to defend himself, rational ones. And I'm reminded also that there was a film somewhere, a psychiatrist is explaining that a person who's having a conversation with a nonexistent tormentor is a rational person within his world. So we have rational action with respect to, in response to a mental figment. Well, a lot of people may want to represent themselves, and it is a bit irrational, but suppose they just don't like lawyers or trust anybody to do with the courts. Does that make them incompetent? In other words, I don't understand. You seem to be arguing that unless a person has a really good rational reason for wanting to represent himself, then there's a problem. But that isn't really what Ferretta says, nor is it what Edwards says. A person can be irrational in that desire and yet competent to do it. But in the end, Your Honor, the Sixth Amendment guarantee of a lawyer, of representation, must surely trump the right of a defendant to physically stand before the court in whatever condition he may find himself. And Edwards is very clear about this. It sets limits on Ferretta. It qualifies this right, this important right to self-representation, however ill-advised it may be, just exactly as the right, for example, to be present at trial is qualified. That's an equally fundamental right. And yet if a defendant is unable to control his conduct, he may be removed from the courtroom. And this happens. So we have a conditional right. It's conditional in the sense that he must do something to be able to use it. And the objective, if we look at Ferretta, why should we allow people to defend themselves? As Judge Fletcher points out, this is generally irrational. Why should we do this? Dignity is one. The ability to control and to manage one's own case is another. And yet these elements are not present here. This man's dignity was not affirmed by the fracas that ensued. What happened here was this, what I call a modus vivendi. I've dealt for many years with mentally ill clients, and a judge, an experienced trial judge, will always seek to accommodate that person within reason so as to maintain the decorum of the court, to maintain the appearance of fairness of the court. And yet in this case, as occasionally happens, this modus vivendi became such that, so contorted, that ultimately it simply denied this man justice. It denied him a fair trial. It's not what should have been done here. Looking back, it's simple to see it. Judge Pyle should simply have said, sir, you must submit to the examination. I'd be happy to consider your request if you do. This doesn't offend his dignity. It doesn't interfere with his rights. And if he were to complete this examination, the court would then have actual facts upon which to base its determination. Counsel, you're down to about a minute and a half, if you'd like to save it for rebuttal. I will, Your Honor. Thank you. Good morning, Your Honors. Erica McCallum from the District of Arizona, Tucson, representing the government. One of your questions was whether a defendant is required every time he wants to represent himself to submit to a competency evaluation. And the answer to that is no, there's no requirement for that. In fact, a competency evaluation is only necessary where there is reasonable cause to believe that the defendant may be incompetent. And there was no demonstration. Do you think Judge Pyle had reasonable cause to send him out for a competency evaluation when he requested to represent himself? No. I just went back and looked at the record. And in that initial Feretta hearing when Judge Pyle ordered the competency evaluation, what he said is, and I'm quoting, I think he's clearly intelligent enough, articulate enough, and clearly wants to represent himself. He understands the nature of the charges against him. He understands the maximum punishments. And I think he understands the advantages of having an attorney. My sole concern is whether he's mentally competent to make this decision. I'm sorry. You mumbled. Read that last sentence again. You mumbled. You dropped your voice. I'm sorry. The judge said, my sole concern is whether he's mentally competent to make this decision. He certainly appears lucid. So what Judge Pyle was saying was, essentially, in an abundance of caution, I'm going to order a competency evaluation. I think that's what he was saying. Yeah. But the evidence in front of him, and it became more pronounced as time went on, the technical term is not looney tunes, but the guy was obsessed in various ways. He was not behaving like we see a lot of these Feretta cases. And what you have is ill-advised people who have various forms of delusions about this is going to work out better for me. But he was worse than most. That's how I read the record. There was, I would remind the Court, an evaluation performed on this defendant, the initial dangerousness evaluation. Now, the purpose of that evaluation was not to determine competency, but that examiner found that the defendant understood the circumstances of the evaluation and found no indication of mental illness. The only mental condition, I guess, was grandiosity, which I'm not really sure entirely what that means, but it probably is self-evident what it means here, but did not find him mentally ill beyond grandiosity, and he had no either personal or family history of mental illness or treatment. But that – when did that information come into the Court's hands? That was provided prior to the initial Feretta hearing as part of the defendant's attempt to be released from detention. So that was not – again, that was not a competency evaluation, but it was there in the record and was discussed by the parties in filings with the Court. I would also just like to bring to the Court's attention – I do believe I put in a footnote the definition of grandiosity from the DSM-5, which is essentially feeling that you're a very important person, maybe some narcissism there. But the question here seems to be – there are two. The first is, after the defendant refused to participate in that competency evaluation, then Judge Pyle went ahead and said, you know what, I'm going to go ahead and I'm going to let you represent yourself without an evaluation. But we need to look at the totality of the case. Look at all the circumstances. This – several months had passed since that initial Feretta hearing in August. This was now the end of October. The – Judge Pyle had had numerous opportunities to have – with hearings with this defendant. He'd interacted with him in court. He'd listened to him. He had had an opportunity face-to-face to make a determination about whether he believed this defendant was competent to proceed, and that really is the Edwards standard. Let the trial court decide. But once the case got underway and he was appearing in front of the district judge, he proceeded to file rather bizarre motions, a number of them, repeatedly. I mean, the docket is just replete with these rather odd motions. Do you think at some point along the way there was an obligation on the district court judge to reassess whether or not he should be allowed to represent himself – to continue to represent himself? I think the records showed that the district court and the magistrate judge and advisory counsel and the government were constantly aware of this – this strategy that this defendant was pursuing. In other words, the court was reading the motions. The court was deciding on the motions. And, yes, there were – I listed in my answering brief at page 22, there were a number of themes that this defendant kept raising. For example, I want to be released from detention. Now, there were a couple of bizarre – bizarrely titled and just very creative motions that defense counsel has included in his opening brief, one of which was the motion to sing for the court. Now, if you look at that in the context of the case, this defendant explained logically, clearly, reasoned out in that motion. When I was arrested, I was awaiting – I'm a talented singer, and I was awaiting to hear back from a Hollywood talent show to see whether I would be accepted as a contestant. And I'm asking you, like another famous Hollywood persona, to release me so that I can pursue my career. Now, these – what we're terming bizarre motions were made in support of that theme of release me from detention because I can – I can – I can work on my case, I can be free from the flies that are plaguing me in these prison conditions, and I can accomplish more if you let me go. So these are – these are factual arguments that he was making in support of this particular theme. However, he also made a number of motions that cited case law, that made logical, legal arguments. And I submit, Your Honors, that that was his pretrial strategy. His strategy was eerily similar to the strategy he took in stalking his victim for 20 years. I will persist, and I will persist until I'm successful. In fact, he made an analogy, which – a basketball analogy, which was, if you take enough shots during the game, eventually you're going to make some points. There was – opposing counsel argues that the absence of, for example, objections to evidence that shouldn't have come in demonstrates that he was not competent to represent himself. What is your response to that? I think we look at the Johnson case for that. In the Johnson case, these defendants made – oh, arguments that were termed off-the-wall, that were termed – the court used a number of very vivid language. It said the defendants can be fools, but they're allowed to do that. In fact, in the Johnson case, the court said a defendant can pursue his theory and go down in flames. That is his right. And the reason for that is because the right to represent yourself and the right to counsel are dueling rights under the Constitution. And there's also, of course, Federal statutory law establishing that self-representation right. So defense counsel has argued today that the right to represent yourself is conditional, but that's not necessarily true unless there's serious – a demonstration of serious mental illness. And here, no one, no one throughout the entire case suggested that this defendant was incompetent, not even defense counsel or advisory counsel, rather, who had a sort of a conflicting relationship with the defendant. Even they didn't say, we need to check this guy out and see if he's competent. If the judge had gone the other way and done what counsel today suggested, which is, I will not allow you to represent yourself unless you cooperate with a mental health examination, would that have been permissible? Well, if you look at the Edwards case, which says that only 20 percent of pro se defendants undergo competency evaluations, in the same breath the Court says that's left to the trial court to make that determination. We defer to the trial court. Is that a yes or a no answer? Could the Court have conditioned the Feretta right on a requirement that he undergo a particular examination? I think the answer would be yes, under specific circumstances, being that the Court had a reasonable belief that this defendant was not competent. Was incompetent. Okay. And I'm running out of time. I'd just like to raise one other point, which is that defense today has argued that the defendant didn't get a fair trial because he didn't put on a defense. And the record actually shows that this defendant went into trial with a strategy and his advisory counsel did not agree with it, but defendant pursued it anyway. And his strategy was, I want to get a hung jury. I want a mistrial or I want nullification. And the way that I'm going to do that is I'm going to tell this jury that I'm not ready to proceed, and if I'm not ready to go, they don't get to hear my side. And if they don't hear my side, then I'm hoping they're going to say we can't make a decision. Now, he made a very eloquent analogy about the symbol of justice to support this theory. He told the Court, you know, justice is a woman who's blindfolded, holding the scales of justice, and the jury should be able to hear both sides because that's what equity is. Now, that's not the statement of an individual who does not understand or is incapable of following his trial strategy. And he did. He followed it to the very bitter end. If I can follow up on Judge Graber's question as to whether or not it is permissible for a judge to condition exercise of her right on undergoing a mental examination. You said it was if the circumstances justify it. In your view, would Judge Pyle have been justified in insisting? I would not construe a yes answer from you as meaning that necessarily the other side wins. But was there enough in front of Judge Pyle to justify in the exercise of his discretion or judgment? I'm not going to let you represent yourself unless we have a mental examination. You know, I'd like to clarify the answer because a mental examination isn't the end of the inquiry. I think that the judge could say I'm going to require you to undergo a mental examination, but then we need to do a mental competency hearing, and I need to hear from essentially opposing evaluations to make a determination as to whether or not this defendant is mentally competent. And I think your question would take that a step further, which is at that point, if the court then did a competency hearing, determine that the defendant was incompetent. You know, no, that's not really my question. Okay. My question was, was there enough in front of Judge Pyle at the time he said I want a mental examination or a competency examination by a mental health professional, was there enough there that he would have been acting appropriately within his discretion to insist upon it? And I say the answer at that point in October of 2010, the answer to that is no. You think it would have been an abuse of discretion for him to insist? It would have been within his discretion, but was there enough indication to give him reasonable, reasonable belief that the defendant was incompetent? I think the answer to that is no. There's no indication. No, I don't care. I think we're still not understanding each other. Okay. I apologize. I said, would it have been an abuse of discretion if he had insisted? And I think you said no, but then I think you said yes. Well, it matters because under the hypothetical that Judge Fletcher is posing, had the judge gone that way and had the defendant refused to participate, he would have been denied the Faretta right at that point. And I don't want to concede that point because I think that the record shows, well, yes, I guess it would have been an abuse of discretion to insist to say I'm going to take away your right to self-represent if you don't submit to a psych evaluation. And I think that's the opposite of what I answered you, and maybe it's because I'm not really understanding the question. But what I keep coming back to is that this defendant was reasoned and methodical and perhaps bizarre and obsessive but not incompetent. He was not, and that's supported in part by the defense's concession that he was competent to stand trial. So the only question is, was he competent to represent himself without a lawyer? And I'm not, and I do not believe that a competence evaluation was necessary to make that determination. So I guess my answer is no. It would have been an abuse of discretion. I mean, there are two questions. One is competent to make the decision to represent himself, and the other one is competent to represent himself. And I think we're really at the question of competent to make the decision. Yeah. Thank you, counsel. I think time has expired. Mr. Jacobs has a little bit remaining. Thank you, Judge Graber. What we should ask ourselves here, Your Honors, is what gets us from Magistrate Pyle's statement, it causes me concern. I want to have a professional opinion as to whether you're competent to understand what you're doing. And my sole concern is whether he's mentally competent and then gets us later after what rehabilitation to all right, very good, all right, well, I'm going to vacate the requirement for the mental examination. And we have this passage where Mr. Shepard is desperate to read his statement. And this happens sometimes. The only time on the record one has to look at it and discern, when this man gets going, it's a page. He's reading off of something. When he speaks, it's gibberish. When he reads, it's gibberish. There was no defense presented here. He, most of the time, simply simulated, emulated a defense. And what I want to know, what I ask is, what gets us from a magistrate judge saying, there's something wrong here? I want an evaluation. What did he do to rehabilitate himself? And the answer is, nothing sufficient. He basically badgered the court. It may have been as simple as fatigue that caused the change of mind. Leave it to the court to determine. But we talk about Johnson here. But there, there were mental evaluations conducted. Professional mental evaluations available to the court. Psychiatry becomes more complex all the time. And we need to respect that. And for a judge to take it upon himself or herself to be psychiatrist as well as jurist is too much of a burden for any one person with no specific training to err on the side of caution, as was the very first thing that Judge Powell wanted to do here. Thank you, counsel.  Thank you. Thank you, counsel. The case just argued is submitted. And we appreciate very much the helpful arguments from both of you.
judges: Graber, Fletcher, Paez